**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BENJAMIN LEVI JOHNSON,**

    **Plaintiff,**

-vs-                                                      **Case No. 6:04-cv-1436-Orl-31DAB**

**HEALTH CENTRAL HOSPITAL,**

    **Defendant.**

## ORDER

Plaintiff, Benjamin Levi Johnson ("Johnson") sued Defendant, Health Central Hospital ("Health Central") for violation of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (the "EMTALA"). Defendant has moved for summary judgment (Doc. 36) and Plaintiff has responded (Doc. 41). Because Plaintiff's claim is frivolous, Defendant's Motion will be granted.

**I.    The Facts**[1]

On November 5, 2000, Plaintiff overdosed on prescription medications and was taken by ambulance to Health Central. (Doc. 42 at 1). He was "disoriented, hallucinating, and out of control." (Doc. 42 at 1). Upon presentation to the emergency department at Health Central, he was evaluated by an emergency medicine physician, and admitted to the hospital under the care of

---

[1] The facts are drawn from the request for admissions that were served on Johnson (Doc. 36 at 8-11) and Johnson's Affidavit (Doc. 42).

Dr. Pradup K. Vangala, (Doc. 36 at 9). Following his examination of Johnson, Dr. Vangala ordered Johnson admitted to the intensive care unit (the "ICU"). (Doc. 36 at 9).

Johnson contends he woke up and asked a nurse if he could use the telephone. (Doc. 42 at 2). He was told he could do so if he signed a form, which he did without reading it or understanding it. (Doc. 42 at 2).[2] His IVs were then removed and Johnson was taken to a telephone in the hallway of the hospital, where he called his boss to come pick him up. (Doc. 42 at 3). His boss picked him up five minutes later. (Doc. 42 at 2). Approximately four hours later, while still under the influence of drugs, Johnson was arrested and subsequently convicted for assaulting a law enforcement officer (Doc. 42 at 2-3). He pled guilty and served 22 months in prison. (Doc. 42 at 3).

## II.    Legal Analysis

### A.    Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material depends on the substantive law of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If there is an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof, that party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine

---

[2]The form he signed was an acknowledgment that he was leaving the hospital against the advice of his attending physician and of the hospital administration (Doc. 36, Ex. A at ¶22).

issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Summary judgment is mandated against the non-moving party who thereafter fails to present sufficient evidence to establish a genuine issue of fact for trial. *Id.* at 322, 324-25.

In this review, the Court must consider all inferences drawn from the underlying facts in a light most favorable to the non-moving party, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. If an issue of material fact exists, the court must not decide it, but rather, must deny summary judgment and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[3]

**B.   The EMTALA**

EMTALA applies to hospitals with an emergency department. It requires that the hospital provide "an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of [42 U.S.C. § 1395dd(e)(1)]) exists." 42 U.S.C. section 1395dd(a). If the hospital determines that the individual has an emergency medical condition, the hospital must either provide such treatment as may be required to stabilize the medical condition, or transfer the individual to another medical facility in accordance with subsection (c) of the Act. 42 U.S.C. § 1395 dd(b). Subsection (c) provides limitations on transfers prior to stabilization of the individual's medical condition. "Transfer" is defined as "the movement (including the discharge) of an individual outside of a hospital's facilities." 42 U.S.C. § 1395dd(e)(4).

---

[3]All decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

In the instant case, the sole question is whether Health Central complied with the EMTALA by providing appropriate medical screening and stabilization. The undisputed facts reflect that Johnson received appropriate medical screening, and was also the recipient of substantial efforts to stabilize his medical condition. According to the affidavit of Health Central's expert, Dr. Charles Lopiccolo (Doc. 36, Ex. B), the medical evaluation, treatment and monitoring of Johnson was well within the appropriate standard of medical and included: an emergency physician's evaluation of the patient's condition; admission to the hospital under the services of Dr. Vangala; admission to an ICU bed; one-to-one monitoring by a nurse; continuing cardiac monitoring in the ICU; continuous respiratory rate monitoring in the ICU; continuous oxygen saturation monitoring in the ICU; continuous blood pressure monitoring in the ICU; IV fluid therapy; ER analysis, culture and toxicology screening; a chest x-ray; various blood work, including a metabolic panel, chemistry assessment, and cultivation studies; and a nursing assessment for risk of pressure ulcers. Doc. 36 at 14-15. Johnson offers no rebuttal, expert or otherwise, except to suggest in his affidavit that "It is my understanding that ... I should have been given a 'charcoal test.'" (Doc. 42 at 2).

Johnson's lay opinion in this regard does not present a material fact sufficient to prevent entry of summary judgment.[4] The purpose of the EMTALA is to prevent "patient dumping" – the practice of turning away or transferring patients without evaluation or treatment. *Harry v. Marchant*, 291 F. 3d 767, 768 (11th Cir. 2002). It was not intended to provide a substitute for state law claims of medical negligence. *Id.* at 770. Thus, the failure to perform a particular medical procedure is not germane to the issue, unless it rises to the level of a failure to

---

[4]Indeed, it is questionable whether this lay opinion even rises to the level of an admissible fact.

appropriately screen and stabilize the patient. There is no showing here that a "charcoal test" was reasonably necessary or appropriate, or that it would have made any difference in the stabilization of Johnson's medical condition.

Johnson abandoned his treatment and left the hospital after signing an acknowledgment that it was contrary to the advice of his physician and the hospital. His statement (Doc. 36 at 2) that he was 'forced to leave the hospital by the nurse,'" is patently ridiculous. Johnson asked to use the phone and when allowed to do so, called his boss for a ride home and left the hospital. He was not forced to leave the hospital; he chose to do so.

### III. Conclusion

Johnson voluntarily overdosed and was transported to Health Central. Health Central, without reasonable expectation of payment by Johnson, provided appropriate screening, admitted Johnson to the ICU and rendered significant medical treatment. Johnson, against the hospital's advice, voluntarily terminated his treatment and left the hospital. Shortly thereafter, he committed a crime. Johnson now seeks to use the remedial provisions of the EMTALA to hold Health Central responsible for the consequence of his criminal conduct. Only in America could someone make such an outlandish claim! Defendant's Motion for Summary Judgment (Doc. 36) is **GRANTED**. This case is removed from the July 2006 trial docket. The Clerk is directed to enter judgment in favor of the Defendant and to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 20, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Party